## CASE *against* HUMPHREY.

In pleading, necessary circumstances implied by law, need not to be expressed.

Therefore, where the declaration, in an action on the case for a false return of a writ, averred, that the writ was directed to the defendant, as an indifferent person, to serve and return; and that after it had been returned to the court to which it was returnable, the plaintiff in that suit recovered judgment by default; it was held, that this was equivalent to an averment, that the writ was *legally* directed to the defendant, and that a *lawful* judgment was rendered thereon.

In case of the direction of a writ to an indifferent person, the certificate of the justice must shew, that the oath was administered in the words prescribed by the statute, and that the person taking the oath, was the plaintiff in the writ, or his agent or attorney.

Therefore, where the certificate of the justice, on a writ brought by *A.* against *B.*, was in these words: " Personally appeared *C.*, and made solemn oath, that he verily believed the plaintiff to be in danger of losing the within described debt, unless an indifferent person be deputed for the immediate service of this writ;" it was held, that the direction was not legal, as it did not appear from the certificate that either of these prerequisites had been complied with.

If the direction of a writ to an indifferent person be not legal, he is not authorized to make service; and a judgment on such writ is necessarily extrajudicial and void.

Evidence of a writ not lawfully directed, and of a judgment in fact rendered thereon, is inadmissible to support an averment that the writ was legally directed, and that a judgment thereon was legally rendered.

In case of a direction not lawful for want of a compliance with the statute prerequisites, the defendant is not obliged, in order to take advantage of this matter,

to plead it in abatement; the meaning of the legislative provision on this sub-
ject, being, that the court shall *ex officio* dismiss the writ; but if the statute
contemplated a plea in abatement, still this would not take away the common
law remedy.

Where an indifferent person, not authorized to serve a writ, for want of a legal
direction, made service in fact, by leaving a copy; it was held, in an action
against him for a false return, that he was not thereby precluded from denying
that the writ was legally directed to him.

*Litchfield,*
June,
1826.

Case
*v.*
Humphrey.

This was an action on the case, for a false return of a writ
of attachment against the plaintiff. The declaration stated,
That on the 16th of *September*, 1823, a writ of attachment was
issued, in favour of *Benjamin Weed*, against the plaintiff, on a
promissory note; that it was directed to the defendant, as an
indifferent person, by *Benjamin Weed*, jun. a justice of the
peace, who signed the writ; that it was delivered to the de-
fendant to execute; that the plaintiff had a good defence to the
action, of which he had neither notice nor knowledge; but that
the defendant fraudulently indorsed upon the writ, that he had
made service of it, and returned it to the county court of *Hart-
ford* county, to which it was returnable; that at the term of
that court, in *November*, 1823, *Benjamin Weed* recovered judg-
ment against the plaintiff, by default; and that by execution is-
sued upon the judgment, the plaintiff's property was subsequent-
ly taken and sold.

The cause was tried, upon the issue of *not guilty*, at *Litch-
field, February* term, 1826, before *Hosmer*, Ch. J.

On the trial, the plaintiff, to support his declaration, offered
in evidence the record of said court; from which it appeared,
that the writ was directed to the defendant, as an indifferent
person, by *Benjamin Weed* jun., a justice of the peace, who cer-
tified upon it as follows: " Personally appeared *Samuel Weed,*
and made solemn oath, that he verily believed the plaintiff to
be in danger of losing the within described debt, unless an indif-
ferent person be deputed for the immediate service of this
writ." To the admission of this record, the defendant objected,
on the ground that it did not support the declaration, inas-
much as the declaration counted on a writ legally directed to
the defendant, and on a judgment legally rendered thereon,
whereas the writ offered in evidence was never legally directed
to the defendant, and no legal judgment was, or could be, ren-
dered thereon. The Chief Justice sustained the objection, and
rejected the evidence. No other evidence being offered, on

*Litchfield,*
June,
1826.

Case
*v.*
Humphrey.

the part of the plaintiff, the jury were directed to return a verdict for the defendant; which they did accordingly. The plaintiff thereupon moved for a new trial.

*Benedict* and *P. Miner*, in support of the motion, contended, 1. That the certificate of the justice on the writ was sufficient, and the defendant was legally authorized to execute the writ. The case of *Eno* v. *Frisbie*, 5 *Day* 122. 127. arose under the former statute, and was decided expressly upon the clause requiring the justice to "*endorse* and *attest* the affidavit on the writ." The revised statute, under which this case arose, requires the justice to certify only, that *he administered* the oath. *Stat.* 35. This requirement has been complied with.

But, it is said, that it does not appear, that *Samuel Weed* was the agent or attorney of the plaintiff. This need not appear on the certificate.

In the first place, the *statute* does not require that it should so appear. It designates the character of the person, who is to make the affidavit; and there it leaves the matter. If this character be disputed, it may be proved, as in other cases. Why should the justice insert it in his certificate? How is he to know, whether a man, who appears as agent, really sustains that character or not? Is he to *try* the question, and to decide it on evidence? For this purpose, he must have both the parties before him, with their witnesses and exhibits? Does the statute contemplate such a course? Was it ever heard of, in practice? The truth is, that if a man appear with the writ, *that* is *prima facie* evidence of his character as party or agent; and no certificate, or other evidence, is necessary, until the contrary be shewn.

Secondly, on *general principles*, it is not necessary. Must it appear on all process, that the person to whom it is committed for service, has power to serve it? Does the process ever shew, that any individual is sheriff, constable, &c.? In case of an attachment, a bond is necessary; but it need not appear on the process, that such bond has been given.

2. That if the requirement of the statute has not been complied with, the process is merely *abateable*, and not absolutely void. The statute has not left this point open for speculation; but it has decided explicitly what the consequence of a non-compliance shall be, *viz.* "the writ *shall abate.*" The term *abate*, as applied to a writ, has a definite techical meaning, *viz.*

that it shall be dismissed on plea. *3 Bla. Comm.* 301. The dis-
tinction between matter *in bar* and *in abatement*, is drawn in
1 *Chitt. Plead.* 434, 5.; and this case falls exactly within that
distinction.     Did the legislature intend to subject the justice
who issued the process, the person who served it, and the court
who rendered judgment on it, in case of a non-compliance
with any of the requirements of the statute? But this would be
the consequence, if the process were *void*. The evil to be
guarded against, did not require so heavy a sanction.     The
writ will ordinarily be well served; the defendant will have
notice; and regularity in the process·is sufficiently secured, by
making the process *abateable* for want of it.     Whenever the
legislature intend to make process *void*, they say so; as in the
case of non-payment of a duty. *Stat.* 184. *tit.* 27. *s.* 10.

3. That if the process were void, still the plaintiff is entitled
to a recovery in this action.     The defendant, by the defence
set up, virtually says—I contrived a fraud on the plaintiff; I
accepted a deputation *in fact* to serve the writ; I made a false
return on it; I was the means of a judgment being rendered by
default against the plaintiff, in consequence of which, his pro-
perty has been taken from him; I perpetrated the wrong as a
deputed person; but I had no legal right to serve the writ, and
therefore, I am not responsible for the injury I have occasioned.
In this reasoning there is something too refined to satisfy justice
or common sense.     The consummation of the injury is in col-
lecting the money on the execution.     But the execution justi-
fies the *officer.*     He must obey the process of the court; for he
cannot know any thing about the previous steps.     He justifies
under his warrant.     Is the defendant to protect himself, by
throwing the blame on to the *court?* Is there no way to reach
the *author* of the wrong?

4. That in no view of the case, is there a variance between
the declaration and the evidence.     The averment is, that a
certain writ of attachment was directed to the defendant, as an
indifferent person, to execute, &c. without saying that this was
a *legal* process.     The record shews just such a process.     It
proves every fact, regarding the process, stated in the declara-
tion.     The defendant was in fact deputed, by the magistrate,
and in the manner, there specified.     Whether the oath be es-
sential to the validity of the writ or not, still it constitutes no
part of the writ.     Where, then, is the variance?

*Litchfield,*
June,
1826.

Case
*v.*
Humphrey.

*J. W. Huntington* and *R. Mills*, contra, contended, 1. That the declaration counted upon a false return of process *lawfully* directed to the defendant to serve, and upon a *lawful* judgment. Throughout the declaration, the process is treated as one which the law recognizes as valid; as one legally directed to the defendant; as one which he was obliged, and had authority, to serve; and as one which laid the foundation of a valid judgment subsequently rendered. Would a *demurrer* to this declaration, or a motion *in arrest of judgment* after issue found for the plaintiff, have been sustained? If not, the reason is, because the averments, which are made, shew, *prima facie*, a cause of action. If it had been stated in this declaration, in terms, that no writ was issued; or that it was not directed to the defendant; or if it had been averred, that a void process was issued and directed; and that the final judgment and execution were both void; will it be claimed, that these averments, connected with the others which appear in this declaration, would have furnished a ground of recovery? Yet to this point is the defendant brought, unless the process and judgment counted on, are to be treated as being averred to be valid. In the construction of a declaration or plea, it is a rule that such facts as the law presumes from averments which are made, are considered as made in terms, though not in form so expressed; *e. g.* in pleading a feoffment, livery and attornment are implied; in pleading an assignment of dower, a *lawful* assignment is implied; in pleading a surrender, reentry of the lessor is implied; in pleading a warrant by the sheriff, it is implied that it was under his *seal*, otherwise it is not a warrant, &c. 1 *Chitt. Plead.* 227, 8. *Co. Litt.* 78. *b.* So here, if the plaintiff avers, that a writ issued, and was directed to the defendant, he necessarily avers, that it was a *lawful* writ and *legally* directed; else, in legal contemplation, it is neither *a writ*, nor is it *directed.* So also, if he avers a judgment, it is presumed to be a *legal* judgment; for if void as such, it is no judgment. The *precedents* are in perfect conformity with this doctrine. *Kent* v. *Elwis,* Cro. Jac. 241, 2. *Alexander* v. *Macauley* & al. 4 *Term Rep.* 611. *Bull* v. *Steward,* 1 *Wils.* 255.

2. That the record offered in evidence, did not shew a legal writ, legally directed, and a legal judgment; but, on the contrary, both the process and the judgment were *void.* The writ which in fact issued, was a writ of attachment, and was directed to the defendant as an indifferent person to serve and return.

It was destitute of three essential requisites made necessary by statute. 1. The affidavit required to be taken, by the plaintiff or his agent, is not *recited verbatim* on the writ, nor *attested* as such, by the magistrate, who signed it. That this was indispensable, previous to the revision of our statutes in 1821, was determined in this Court, in the year 1811, in the case of *Eno* v. *Frisbie*, 5 *Day* 122. The duty of the magistrate is obviously the same now, as it was then. By the present law, the magistrate is to certify, on the writ, that he administered a prescribed oath. It is to appear from his certificate what oath he administered. This is to be the evidence, and the only evidence of what was done by him. And how can he certify, that he administered an oath, in a particular form of words, unless the words are recited? 2. The oath, which was administered in this case, was not *the oath prescribed* in the statute. The statute gives the form of oath, and then adds, "which oath the authority signing the writ is empowered to administer." If any other than the precise form of oath prescribed, may be substituted, the discretion of the magistrate is put in the place of the law; and the form of oath, instead of being given by the legislature, is prescribed by him. 3. The oath was not administered to the *plaintiff*, or his *agent* or *attorney ;* nor is it so certified. *Samuel Weed* was not the plaintiff; nor does it appear from the certificate, or any part of the process, that he was the plaintiff's agent or attorney. It is manifest that the legislature intended it should appear *on the face of the proceeding*, that the requisites to justify a direction to an indifferent person, were complied with. These not appearing, in this case, the magistrate had no power to issue such a writ, with such a direction to the defendant; and the defendant had no authority, and was under no obligation, to serve it.

A judgment by default, on such a process, in accordance with the first principles of justice, adjudicated cases, and the express provisions of our statute, is *utterly void. Stat.* 37. 8. *tit.* 2. *s.* 11. *Martin* v. *Marshall* & al. *Hob.* 63. *Perkin* v. *Proctor* & al. 2 *Wils.* 386. *Entick* v. *Carrington* & al. 2 *Wils.* 275. *Smith* v. *Bouchier & al.* 2 *Stra.* 993. *Thatcher* v. *Powell*, 6 *Wheat.* 119. 126, 7. *Hart* v. *Huckins*, 6 *Mass. Rep.* 399. *Kibbe* v. *Kibbe*, *Kirb.* 119. *Grumon* v. *Raymond* & al. 1 *Conn. Rep.* 40. *Slocum* v. *Wheeler* & al. 1 *Conn. Rep.* 429. 449. *Aldrich* v. *Kinney*, 4 *Conn. Rep.* 380. *Buchanan* v. *Rucker*, 9 *East* 182. *Pawling &*

*Litchfield,*
June,
1826.

Case
*v.*
Humphrey.

al. v. *Bird's Executors,* 13 *Johns. Rep.* 192. 207. *Borden* v. *Fitch,* 15 *Johns. Rep.* 121. 141, 3, 4.

3. That the process and judgment offered in evidence, were properly rejected. No doctrine is better settled, than that the plaintiff must prove his cause of action, as he has averred it to be. He must, of course, in this case, prove his writ and judgment, which he alleges to be valid, by competent evidence of such a writ and judgment. 2 *Phill. Ev.* 221. & n. 222. 229. & n. 231. 236, 7.

4. That if this declaration does not count upon a *legal* process and judgment, but upon one merely *in fact* directed and rendered; and if, therefore, the evidence offered of such process and judgment was properly received; still a new trial will not be granted, because upon this evidence the plaintiff has no cause of action. First, the plaintiff has sustained no legal injury at the hands of the defendant; for no action for a false return on mesne process will lie, where the person to whom it was delivered for service, and who made the return, had no authority to serve it. As it gives him neither the right, nor creates an obligation on him to execute it, it of course subjects him to no responsibilities, either for not executing it, for a mere defective execution of it, or for falsely returning, that it had been executed. No action for a false return will lie against a defendant, unless he was *authorized* by law to serve the process; because this action is always against an *officer,* not against individuals unauthorized to make service. Secondly, admitting that cases might exist, in which for an injury occasioned by a false return on a void process, the person making such return would be responsible in a civil suit; yet in the present case, the facts stated and those offered to be proved, create no such responsibility. The only damage, which the plaintiff claims he has sustained, or which he could possibly sustain, by the act of the defendant, arises from the levy on his property of an *execution,* which issued on a *void* judgment. The defendant's return of service, not followed up by the judgment, was perfectly harmless. The judgment is the act of the law, pronounced and declared by the court, after due deliberation and enquiry; and it is not competent to aver, that all the previous proceedings were not duly examined and considered. The plaintiff, therefore, has sustained the alleged injury, through the act of the *court,* in rendering a judgment which they had no authority to render. It is precisely the same case, as though there had been no re-

*Litchfield,*
June,
1826.

Case
*v.*
Humphrey.

turn of service at all, or as though a judgment had been rendered without any process.

HOSMER, Ch. J. The question first occurring, is, whether the plaintiff's declaration avers, that the writ was *legally* directed to the defendant, and that a *lawful* judgment was rendered thereon.

It is a maxim in pleading, if the words are equivocal, that they shall be construed most strongly against the party using them. *Co. Litt.* 303. *b.* 1 *Wms. Saund.* 259. n. 8. *Dovaston* v. *Payne,* 2 *H. Black.* 530. This, however, is not an isolated rule, but must be construed in harmony with other well settled principles. It means no more than this; that when the intendment of words cannot be ascertained, by the admitted rules of construction, and there still remains an ambiguity, that then, against the party pleading, the exposition must be unfavourable. But as the plainest expressions, under the influence of refined and subtle criticisms, may sometimes be the subject of doubt; and as the principle is well established, that the language of the pleader must have a reasonable intendment and construction; to remove ambiguity, an auxiliary rule has been adopted. It is this, that when an expression is capable of different meanings, that shall be taken, which will support the declaration or plea, and not that which would defeat it. 1 *Chitt. Plead.* 342. *Hyat* v. *Aland,* 1 *Salk.* 325. *King* v. *Stevens & Agnew,* 5 *East,* 244. The same principle is familiarly applied in the construction of agreements, in order to render the transaction of the parties effectual. *King* v. *Stevens & Agnew,* 5 *East,* 244. *Pugh &* ux. v. Duke of *Leeds,* 2 *Cowp.* 714. *Burr. Sett. Ca.* 719. *Caldecott,* 19. *King* v. *Cartwright,* 4 *Term Rep.* 490.

Understanding, then, the words of the pleader in that sense which is effectual to support his declaration, and in which it is a rational supposition, that he intended to use them; when he avers, that a writ was directed, the construction undoubtedly is, that it was legally directed; and when he declares, that a judgment was rendered, the fair intendment is, that it was legally rendered.

On the same principle, it is, that necessary circumstances implied by law, need not be expressed. If it be averred, that a person was *infeoffed,* livery and attornment are implied; or that land was assigned in dower, that it was lawfully assigned by *metes* and *bounds.* And yet it is obvious, that the feoffment may have been made without attornment or livery, and the dow-

*Litchfield,*
June,
1826.

Case
*v.*
Humphrey.

er assigned without specific boundaries. This principle has been illustrated and applied, in many cases, which it would be superfluous to mention. 1 *Chitt. Plead.* 227. *Co. Litt.* 78. *b.* 2 *Wms. Saund.* 305. *a.* n. 13. The decisions alluded to, are put as instances of good pleading, and repeatedly have been sanctioned. In like manner, *ut res magis valeat,* and in conformity with reason and good sense, the averment, that a writ was directed to an indifferent person, and a judgment recovered, must be intended to mean a *legal* direction and a *lawful* judgment.

From the books of entries, the depositories of correct pleadings, it appears to be a common allegation, that a writ was directed to the sheriff, or that a judgment was rendered, without prefixing the word lawfully, or annexing any further description. 2 *Chitt. Plead.* 162. 3 *Chitt. Plead.* 300. 302. 303.

No doubt can be entertained, that the plaintiff's declaration was sufficient to withstand a demurrer; and that he has done what it was necessary he should do ; and that is, he has averred, that the writ was lawfully directed to the defendant, as an indifferent person, and that a lawful judgment was rendered upon it.

Did the testimony offered sustain this allegation ?

The writ in question was directed to the defendant, as an indifferent person ; and the justice who administered the preliminary oath, certified in the following terms : " Personally appeared *Samuel Weed,* and made solemn oath, that he verily believed the plaintiff to be in danger of losing the within described debt, unless an indifferent person be deputed for the immediate service of the writ."

The law requires, if a sheriff or constable cannot be obtained to serve process, that before the direction of it to an indifferent person, an affidavit, in certain prescribed words, shall be made, by the plaintiff, or his agent, and the same shall be certified on the writ. *Stat. p.* 35.

Certain positions relating to this subject, are perfectly incontrovertible.

The certificate of the justice, regarding the administration of the oath, is the only source of evidence to which the court can recur. From this it must appear, at least by reasonable construction of the words of it, and not from conjecture, presumption or any thing *de hors,* that the prerequisites of the law have been complied with. *Stanton* v. *Button,* 2 *Conn. Rep.* 527. The oath must be administered, in the prescribed words of the

law, and not in what the justice may, perhaps, very erroneously, consider equivalent expressions; and from his certificate this must appear.    It likewise must appear, that the person making affidavit, was the plaintiff in the suit or his agent.    The service of writs, in general, is required to be made by a known public officer; and it is no unwarrantable inference, that the protection and security of the citizen are interested in the prevention of any unnecessary departure from this principle.    The plaintiff's declaration, if the facts are stated truly, is an illustration and proof of this position.    The direction of a writ to an indifferent person, is an exception from the general rule; and all exceptions from the common principle are to receive a strict construction.

To the direction of the writ in question, there are two decisive objections.    In the first place, the oath was administered to *Samuel Weed*, who certainly was not the *plaintiff* in the suit; nor is it said, that he was his *agent*.    He was a stranger, incapable of making a legal affidavit.    The law is peremptory, that the oath shall be made, by the plaintiff, or his agent; and he was neither.    It cannot be presumed, as there is nothing from which a presumption can be made, that he was authorized by the plaintiff; unless we admit, to aid the justice's certificate, that all mankind were his agents: for every man in the community, from the nature of the case, is equally within the scope of this liberal conjecture.

There is a second objection precisely as fatal to the legality of the direction.    The justice has not certified, that he administered the oath prescribed by law; but that the deponent swore to something, which the justice considered of the same import.

The direction of the writ not being legal, the indifferent person was, in no sense, an officer, nor invested with authority to make service.    There being no service, nor even possibility of it, under the illegal direction, the judgment of the court was extra-judicial and void.    The jurisdiction of a court, if it extend to the parties and subject matter, when legally before them, can never be called into exercise, unless through the medium of a process, complete in law, and duly served; or in other words, the court must first have cognizance of the process, before it can do any legal act in the cause. *Grumon* v. *Raymond* & al. 1 *Conn. Rep.* 40.    Between a writ not duly directed to an indifferent person, and one that has no direction in fact, there is no legal difference.

It results, most clearly, that the evidence offered, of a writ not lawfully directed, of a judgment in fact only, and not in law, did not sustain the averment, that a writ was legally directed, or that a judgment was legally rendered; and for this reason, it was correctly repelled.

The plaintiff has contended, that it is too late for the court to act upon the objections to the writ and judgment, which have been discussed.

He first insists, that the only remedy for the unauthorized direction of the writ, was by plea of abatement; and to sustain this position, he relies on the words of the statute, *p.* 35., that, " if any writ &c. shall be directed to an indifferent person, except in the cases and under the regulations above mentioned, it *shall abate.*" The law, most manifestly, has been misconceived, by the confounding of two expressions of very different meaning. It is not said, that the defendant shall take his redress by plea of abatement, but that the writ shall abate. This is a generic term, derived from the *French* word *abattre*, and signifies to quash, beat down, or destroy. 3 *Black. Com.* 168. The modes of abatement are various; but the thing is simple and uniform. A plea of abatement is one mode of quashing a writ; but it is not the only one. Sometimes it is the duty of the court to abate the writ *ex officio*; and the instances where this is the legal and proper remedy, are numerous. Where a writ is a nullity, so that judgment thereon would be incurably erroneous, it is *de facto* abated. Earl of *Clanrickard's* case, *Hob.* 280. Case of *Fines,* 3 *Rep.* 85. *Hughson* v. *Webb, Cro. Eliz.* 121. *Cooke* v. *Gibbs,* 2 *Mass. Rep.* 193. *Wood* v. *Ross,* 11 *Mass. Rep.* 271. And even *the* explicit admission of its validity by the party, never concludes the court. In the case before us, it never could have been the intention of the legislature, to suspend the remedy on a plea of abatement, but to enjoin on the court, that a writ, incomplete, without direction to a person who could serve it, and attended with a defect, palpable, fatal and unamendable, should be quashed. *Eno* v. *Frisbie,* 5 *Day,* 127. When they declared, that such writ shall *abate*, the term was used in its most comprehensive sense, not prescribing a mode, but commanding the thing, in a manner the most absolute and imperious.

If, however, the law had prescribed, that the writ should be dismissed, on plea of abatement, it would have made no difference in the case. The prescription of one mode of redress

where the common law gives another remedy, does not operate a repeal of the common law, if there is no inconsistency between them; but they shall both have a concurrent efficacy. Dr. *Foster's* case, 11 *Rep.* 63. 1 *Black. Com.* 89. The common law must be negatived, by the statute, or the matter must be so clearly repugnant, as to imply a negative, in order to effect a repeal of it.

The result on this part of the argument, is, that the statute has not required a plea of abatement in the case supposed ; and if it had, it would not take away the common law remedy.

It has been said, the defendant is estopped to deny, that the writ was legally directed to him, inasmuch as he acted under it, and thus virtually declared, that the direction was legal. The objection is too unfounded to require discussion. The facts were truly represented, by the copy left in service; and the plaintiff, who must be presumed to know the law, had knowledge, if the copy reached him, that the defendant was not invested with any authority for the performance of this act. The opinion of the defendant implied from the proceeding, that he was duly empowered to serve the writ, is of no legal effect, either in relation to himself or others ; and it would constitute a new head of estoppel, to hold, that such opinion precluded a defence against a groundless claim.

Brainard, Lanman and Daggett, Js. were of the same opinion.

Peters, J. The objection to the evidence offered by the plaintiff, seems to have originated in a mistaken construction of the statute. The act of 1804 (ed. 1808. *tit.* 95. *sect.* 2.) not only provides, That before the authority signing a writ of attachment shall direct it to an indifferent person, the plaintiff, or his agent, shall make an *affidavit* in certain words ; but also directs the magistrate to *endorse* and *attest* the same, in the words prescribed. *Eno* v. *Frisbie,* 5 *Day* 122. The revised statute, (*tit.* 2. *sect.* 2.) though it prescribes an oath in the same words, merely directs him to certify on the writ, that he administered the same ; and adds, that " if any writ of attachment be directed to an indifferent person, except in the cases and under the regulations above-mentioned, the same shall *abate*." But it does not say, in conformity with the defendant's claim, that the same shall be *void ;* nor does it direct, that the magistrate shall

*Litchfield,*
*June,*
*1826.*

Case
*v.*
Humphrey.

certify, that the person making such *affidavit*, is the *agent*, which would make it necessary for such person to produce a letter of attorney, before he could be permitted to make such *affidavit*. It is enough, in my opinion, that he appear and act as agent, from which his agency is to be presumed. But whether the writ was void, voidable or abateable, judgment and execution upon it were awarded against the plaintiff, without notice, whereby his property was taken and sold at the post, by means of the fraud, falsehood and malice of the defendant, for which he ought to be responsible; and no hypercriticism ought to screen him from justice. I advise a new trial.

New trial not to be granted.